OPINION OF THE COURT
Gustin L. Reichbach, J.
These three defendants, whose cases have been consolidated for decision, seek to set aside their respective sentences pursuant to CPL 440.20. They argue that a period of postrelease supervision that was imposed when they were resentenced is illegal since the resentencing occurred after each had been released from custody. The District Attorney argues that their motions must be denied since they were still under the control of the Department of Correctional Services because they were on conditional release: an issue not directly addressed by the Court of Appeals in its recent decision, People v Williams (14 NY3d 198 [2010]).
In Williams (supra), the Court of Appeals posed the question presented as “whether there are statutory or constitutional impediments to imposing postrelease supervision at resentencing on defendants who have completed their terms of imprisonment and been released into the community” (id. at 206 [emphasis added]). Despite this seeming emphasis on physical confinement, the People argue that these three defendants have not been released from confinement as envisioned in Williams: that despite being released from custody by the Department of Correctional Services at the time they were resentenced to post-release supervision they had not yet completed their determinate terms of imprisonment and were only on conditional release after serving 85% of their prison terms.
In 1998, the Legislature adopted what has now become known as Jenna’s Law, which sought to abolish parole, institute determinate sentencing for certain felony offenses and require that every determinate sentence also provide for a period of postrelease supervision. In Williams (supra), the Court of Appeals reviewed its jurisprudence regarding the implementation of mandatory postrelease supervision beginning with People v Catu (4 NY3d 242 [2005]). In Catu, the Court required that for a plea *925 to meet the standard of being knowing, voluntary, and intelligent, a defendant must be informed at the time of the plea that a period of postrelease supervision constitutes part of his sentence.
Subsequently, in People v Louree (8 NY3d 541 [2007]), the Court held that a Catu error may be raised on direct appeal even if the defendant did not preserve the issue by moving to withdraw the plea prior to sentencing. Then, in Matter of Garner v New York State Dept. of Correctional Servs. (10 NY3d 358 [2008]) and People v Sparber (10 NY3d 457 [2008]), the Court held that the Department of Correctional Services did not have the authority to add postrelease supervision to an inmate’s sentence, holding that only a judge may impose a sentence of postrelease supervision. The Legislature responded to the decisions issued by the Court of Appeals in this area by enacting Correction Law § 601-d, which, inter alia, allowed for defendants to be returned to the court where the original sentence was pronounced so that the sentence could be modified to include a period of postrelease supervision (see Penal Law § 70.85).
In Catu, the Court of Appeals held that a defendant not properly advised of the imposition of a period of postrelease supervision at the time the plea was entered was entitled to a vacatur of the plea. An issue left unanswered until Williams was whether defendants could keep their original plea and sentence when it did not provide for postrelease supervision. (See People v Boyd, 12 NY3d 390 [2009].) The five defendants whose appeals were consolidated in Williams did not seek vacatur of their convictions because they had completed their previously imposed prison sentences and had been released from custody by the Department of Correctional Services. (People v Williams at 209.)
As noted above, in discussing the specific factual circumstances of the five defendants in Williams, to wit: Williams, Echevarria, Rodriguez, Lewis, and Hernandez, the Court made no finding nor did it mention whether these defendants were on conditional release when postrelease supervision was imposed. Rather, the Court of Appeals characterized the factual circumstance of all these defendants as defendants who “have completed their originally-imposed prison sentences and have been released from custody by DOCS.” (Id. at 209.) In all five of the consolidated cases in Williams, the resentencing procedure occurred after the defendants were released from prison. They *926 had argued to the Court of Appeals that once they were freed from confinement, they were entitled to a “legitimate expectation of finality” in the sentences that had been originally, if improperly, issued by the sentencing court. (Id. at 214.) The prosecution claims that based on information dehors the record in Williams, they have been informed by the Department of Correctional Services that each of the defendants who constituted the five appellants in Williams were, unlike the instant defendants, beyond the maximum expiration date of their originally imposed prison term when they were resentenced to postrelease supervision.
The Williams Court held that “there must be a temporal limitation on a court’s ability to resentence a defendant” and even where defendant’s sentence is illegal, “there is a legitimate expectation of finality once the initial sentence has been served.” (Id. at 217.) Consequently, the Court held that after release from prison, the Double Jeopardy Clause prevents a defendant from being resentenced to receive a postrelease component to the original completed sentence.
As noted here, the People distinguish the instant cases by arguing that even though these defendants were no longer physically incarcerated, they had not completed serving their sentences of imprisonment because they were at liberty on conditional release and still owed some portion of their original sentence, should they violate the terms of their conditional release. Unfortunately for the People, this circumstance was specifically addressed by the Court in Williams, which noted, “[ijt is true that defendants were released from prison after serving less than the entire term of their determinate sentences” but that fact “d[id] not alter our analysis.” (Id. at 218.) Despite the prosecutor’s argument, the Court of Appeals specifically recognized that state law permits defendants’ release after having served substantial portions of their determinate prison terms, and that the critical fact was that, the “defendants’ release from incarceration erected a Double Jeopardy Clause barrier to any subsequent upward modifications of their original sentences.” (Id. at 219 [emphasis added].)
The Court held in unambiguous language that the Double Jeopardy Clause prohibits the Court from resentencing the defendants to the mandatory term of postrelease supervision after the defendants are released from confinement by the Department of Correctional Services; that the decisive issue for the purpose of double jeopardy analysis is the question of release from confinement.
*927 Based upon the foregoing, the court finds that it had no authority to impose a period of postrelease supervision on these defendants since, at the time it was imposed, they had been released from custody, notwithstanding that the release was “conditional.” Consequently, the defendants’ motions are granted. The resentencing of these defendants for a period of postrelease supervision is vacated and their original sentences are reinstated.