[925 NE2d 878, 899 NYS2d 76]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARRELL WILLIAMS, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EFRAIN HERNANDEZ, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CRAIG LEWIS, Appellant.

In the Matter of DANNY ECHEVARRIA, Appellant, v PATRICIA D. MARKS, Monroe County Court Judge, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWIN RODRIGUEZ, Appellant.

Argued January 7, 2010, decided February 23, 2010

**POINTS OF COUNSEL**

*Center for Appellate Litigation,* New York City (*Mark W. Zeno* and *Robert S. Dean* of counsel), for appellant in the first above-entitled action. The court's imposition of a three-year period of postrelease supervision at resentencing—nearly four years after sentencing, and after appellant had served every day of the three-year determinate prison sentence imposed by the court—exceeded the court's inherent power to correct invalid sentences, and violated double jeopardy and due process. (*People v Minaya,* 54 NY2d 360; *People v Hernandez,* 59 AD3d 180; *People v Spar-ber,* 10 NY3d 457; *Matter of Murray v Goord,* 1 NY3d 29; *People v Boyd,* 12 NY3d 390; *Matter of Garner v New York State Dept. of Correctional Servs.,* 10 NY3d 358; *People ex rel. Hirschberg v*

*Orange County Ct.,* 271 NY 151; *People v Wright,* 56 NY2d 613; *People v Bing,* 76 NY2d 331; *People v Bartolomeo,* 53 NY2d 225.)

*Center for Appellate Litigation,* New York City (*Barbara Zolot* and *Robert S. Dean* of counsel), for appellant in the second above-entitled action. I. The court exceeded its inherent authority in resentencing appellant to postrelease supervision after the People's time to appeal had expired and appellant had completed his seven-year sentence; nor did (or could) Correction Law § 601-d permit this resentencing. (*People v Sparber,* 10 NY3d 457; *Matter of Garner v New York State Dept. of Correctional Servs.,* 10 NY3d 358; *People v Wright,* 56 NY2d 613; *Ward v Williams,* 240 F3d 1238; *People v Minaya,* 54 NY2d 360; *Stogner v California,* 539 US 607; *Falter v United States,* 23 F2d 420, 277 US 590; *People v Epton,* 19 NY2d 496; *People v Finkelstein,* 9 NY2d 342; *United States v DiFrancesco,* 449 US 117.) II. Double jeopardy and due process barred the court from resentencing appellant to postrelease supervision. (*Benton v Maryland,* 395 US 784; *Heath v Alabama,* 474 US 82; *People v Singer,* 44 NY2d 241; *Jones v Thomas,* 491 US 376; *North Carolina v Pearce,* 395 US 711; *United States v DiFrancesco,* 449 US 117; *Pennsylvania v Goldhammer,* 474 US 28; *People v Williams,* 87 NY2d 1014; *United States v Rosario,* 386 F3d 166; *Stewart v Scully,* 925 F2d 58.)

*Center for Appellate Litigation,* New York City (*Carl S. Kaplan* and *Robert S. Dean* of counsel), for appellant in the third above-entitled action. The court's resentence, which added a five-year term of postrelease supervision to appellant's five-year determinate sentence, exceeded the court's inherent authority to correct an illegal sentence, and violated double jeopardy and due process, where more than six years had passed since the imposition of the original sentence, which appellant fully served and which had long expired. (*Matter of Kisloff v Covington,* 73 NY2d 445; *People v Wright,* 56 NY2d 613; *People v Minaya,* 54 NY2d 360; *People v Sparber,* 10 NY3d 457; *Ward v Williams,* 240 F3d 1238; *Matter of Garner v New York State Dept. of Correctional Servs.,* 10 NY3d 358; *People ex rel. Harty v Fay,* 10 NY2d 374; *Stogner v California,* 539 US 607; *People v Epton,* 19 NY2d 496; *People v Finkelstein,* 9 NY2d 342.)

*Timothy P. Donaher, Public Defender,* Rochester (*Brian Shiffrin* and *Drew R. DuBrin* of counsel), for appellant in the fourth above-entitled proceeding. I. A CPLR article 78 proceeding in

the nature of prohibition lies when a court is threatening to take actions that would violate the Double Jeopardy Clauses of the United States and New York Constitutions. (*Matter of Corbin v Hillery,* 74 NY2d 279, *affd sub nom. Grady v Corbin,* 495 US 508; *Matter of Davis v Brown,* 87 NY2d 626; *Matter of Echevarria v Marks,* 57 AD3d 1479; *Matter of Plummer v Rothwax,* 63 NY2d 243; *Matter of Wiley v Altman,* 52 NY2d 410; *Hall v Potoker,* 49 NY2d 501; *Matter of Abraham v Justices of N.Y. Supreme Ct. of Bronx County,* 37 NY2d 560; *Matter of Randall v Rothwax,* 78 NY2d 494; *Schmidt v Roberts,* 74 NY2d 513; *Matter of Patel v Breslin,* 45 AD3d 1240.) II. The constitutional double jeopardy proscription against multiple punishments for the same offense prohibits a court from imposing an additional penalty of postrelease supervision after defendant has served his entire originally imposed sentence of a determinate term of imprisonment, even though the original sentence was illegal because of its failure to include a period of postrelease supervision. (*Matter of Suarez v Byrne,* 10 NY3d 523; *North Carolina v Pearce,* 395 US 711; *Ex parte Lange,* 18 Wall [85 US] 163; *United States v DiFrancesco,* 449 US 117; *Stewart v Scully,* 925 F2d 58; *United States v Silvers,* 90 F3d 95; *People v Hoppie,* 220 AD2d 528; *United States v Lundien,* 769 F2d 981; *People v Campanella,* 297 AD2d 642; *People v DeValle,* 94 NY2d 870.) III. It is fundamentally unfair, in violation of the constitutional guarantees of due process, for a court to impose an additional penalty of postrelease supervision after defendant has completely served his originally imposed sentence of a determinate term of imprisonment, notwithstanding that the original sentence was illegal because of its failure to include a period of postrelease supervision. (*United States v Lundien,* 769 F2d 981; *DeWitt v Ventetoulo,* 6 F3d 32; *Breest v Helgemoe,* 579 F2d 95; *Matter of Murray v Goord,* 1 NY3d 29; *Earley v Murray,* 451 F3d 71; *People v Drake,* 61 NY2d 359; *People v Campbell,* 97 NY2d 532; *People ex rel. Harty v Fay,* 10 NY2d 374; *Matter of National Equip. Corp. v Ruiz,* 19 AD3d 5; *Matter of Corbin v Hillery,* 74 NY2d 279.)

*Center for Appellate Litigation,* New York City (*Mark W. Zeno* and *Robert S. Dean* of counsel), for appellant in the fifth above-entitled action. I. The court's resentence, adding five years' postrelease supervision to appellant's sentence years after the People's time to challenge it had expired, and after appellant had completed it, was illegal as a matter of state law and forbidden by the State and Federal Double Jeopardy and Due Process Clauses, and is reviewable by this Court on each of those

grounds; alternatively, counsel was ineffective for failing to challenge the court's power to resentence on those grounds. (*People v Hernandez,* 59 AD3d 180, 12 NY3d 817; *People v Wright,* 56 NY2d 613; *People v DeValle,* 94 NY2d 870; *Carlisle v United States,* 517 US 416; *United States v Smith,* 331 US 469; *United States v Rico,* 902 F2d 1065; *United States v Cook,* 890 F2d 672; *People ex rel. Harty v Fay,* 10 NY2d 374; *People v Drake,* 61 NY2d 359; *People v Nieves,* 2 NY3d 310.) II. Even assuming that the court had the power to resentence appellant, and that power was not limited by either double jeopardy or due process, it had the discretion to refrain from resentencing him, which it failed to exercise. (*People v Cronin,* 60 NY2d 430; *People v Day,* 73 NY2d 208; *People v Farrar,* 52 NY2d 302; *People v Richardson,* 100 NY2d 847; *People ex rel. Hirschberg v Orange County Ct.,* 271 NY 151; *People v Minaya,* 54 NY2d 360; *People v Young,* 94 NY2d 171; *People v Wright,* 56 NY2d 613; *Matter of Pirro v Angiolillo,* 89 NY2d 351; *Matter of Garner v New York State Dept. of Correctional Servs.,* 10 NY3d 358.)

*Cyrus R. Vance, Jr., District Attorney,* New York City (*David M. Cohn* and *Mark Dwyer* of counsel), for respondent in the first above-entitled action. The trial court properly corrected its error in failing to pronounce defendant's postrelease supervision term. (*People ex rel. Johnson v Warden, Rikers Is. Correctional Facility,* 4 Misc 3d 535, 16 AD3d 183; *People v Boyce,* 12 AD3d 728; *People v Bell,* 305 AD2d 694; *People v Crump,* 302 AD2d 901; *People v Sparber,* 10 NY3d 457; *People v Sturgis,* 69 NY2d 816; *People v Stroman,* 36 NY2d 939; *People v McClain,* 35 NY2d 483; *People v Fuller,* 57 NY2d 152; *People v Wright,* 56 NY2d 613.)

*Cyrus R. Vance, Jr., District Attorney,* New York City (*Martin J. Foncello* and *David M. Cohn* of counsel), for respondent in the second and third above-entitled actions. The trial court properly corrected its error in the pronouncement of defendant's postrelease supervision term. (*People v Sparber,* 10 NY3d 457; *People ex rel. Johnson v Warden, Rikers Is. Correctional Facility,* 4 Misc 3d 535, 16 AD3d 183; *People v Boyce,* 12 AD3d 728; *People v Bell,* 305 AD2d 694; *People v Crump,* 302 AD2d 901; *Earley v Murray,* 451 F3d 71; *People v Martinez,* 40 AD3d 1012; *People v Sturgis,* 69 NY2d 816; *People v Dodson,* 48 NY2d 36; *People v DeValle,* 94 NY2d 870.)

*Andrew M. Cuomo, Attorney General,* Albany (*Rajit S. Dosanjh, Barbara D. Underwood* and *Nancy A. Spiegel* of

counsel), for respondent in the fourth above-entitled proceeding. Prohibition was correctly denied because petitioner had an adequate remedy at law. (*Matter of State of New York v King*, 36 NY2d 59; *Matter of Oglesby v McKinney*, 7 NY3d 561; *Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *Matter of Holtzman v Goldman*, 71 NY2d 564; *La Rocca v Lane*, 37 NY2d 575; *People v Sparber*, 10 NY3d 457; *Matter of Corbin v Hillery*, 74 NY2d 279, *affd sub nom. Grady v Corbin*, 495 US 508; *United States v Dixon*, 509 US 688; *Matter of Plummer v Rothwax*, 63 NY2d 243; *Matter of Wiley v Altman*, 52 NY2d 410.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Martin J. Foncello* and *David M. Cohn* of counsel), for respondent in the fifth above-entitled action. The trial court properly corrected its error in the pronouncement of defendant's postrelease supervision term. His claims to the contrary are unpreserved and meritless. (*People v Sparber*, 10 NY3d 457; *United States v DiFrancesco*, 449 US 117; *People v Michael*, 48 NY2d 1; *People v Hansen*, 99 NY2d 339; *People v Gonzalez*, 99 NY2d 76; *People v Ruz*, 70 NY2d 942; *People v Ingram*, 67 NY2d 897; *People v Marshall*, 228 AD2d 15; *People v Campbell*, 97 NY2d 532; *People v Fuller*, 57 NY2d 152.)

*Legal Aid Society, Criminal Appeals Bureau*, New York City (*Kerry Elgarten* of counsel), amicus curiae pro se in the fourth above-entitled proceeding. I. The court cannot, consistent with constitutional protections, resentence appellant to an enhanced sentence after the originally imposed sentence has been fully served; such action is effectively a new sentence; it would violate due process and double jeopardy, and would be outside the court's jurisdiction. (*Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *People v Sparber*, 10 NY3d 457; *People v DeValle*, 94 NY2d 870; *People v Williams*, 87 NY2d 1014; *North Carolina v Pearce*, 395 US 711; *United States v DiFrancesco*, 449 US 117; *United States v Triestman*, 178 F3d 624; *United States v Gelb*, 944 F2d 52; *United States v Rico*, 902 F2d 1065; *United States v Sacco*, 367 F2d 368.) II. Because the court failed to mention postrelease supervision at the plea and did not impose it at sentencing, appellant is in a "no-return position," having detrimentally relied on the plea promise by serving all five years of his originally imposed sentence; specific performance of the original five-year promise is mandated by due process. (*People v Catu*, 4 NY3d 242; *People v Selikoff*, 35 NY2d 227; *People v McConnell*, 49 NY2d 340; *People v Grimaldi*, 200

AD2d 687; *People v Jones,* 99 AD2d 1; *People v Griffith,* 43 AD2d
20; *Matter of Chaipis v State Liq. Auth.,* 44 NY2d 57; *Santobello
v New York,* 404 US 257; *People v DeValle,* 94 NY2d 870; *People
v Spector,* 85 AD2d 535.)

**OPINION OF THE COURT**

GRAFFEO, J.

In 1998, as part of Jenna's Law, the Legislature adopted Penal
Law § 70.45, which directs that postrelease supervision is a
mandatory component of all determinate prison sentences. We
subsequently held that a sentencing court's failure to pronounce
postrelease supervision during sentencing proceedings results in
an illegal sentence that cannot be administratively corrected by
the Department of Correctional Services (*see Matter of Garner v
New York State Dept. of Correctional Servs.,* 10 NY3d 358, 360
[2008]). The Legislature responded in 2008 by enacting Correc-
tion Law § 601-d to provide a mechanism for courts to consider
resentencing defendants serving determinate sentences without
court-ordered postrelease supervision terms. In these appeals,
we consider whether there are statutory or constitutional
impediments to imposing postrelease supervision at resentenc-
ing on defendants who have completed their terms of imprison-
ment and been released into the community.

## I. The History of Postrelease Supervision

The intent of the Legislature in adopting Jenna's Law was to
abolish parole and institute determinate terms of imprisonment
for certain felony offenses (*see* L 1998, ch 1). A major component
of this statutory scheme required that every determinate
sentence must also provide for postrelease supervision (PRS)
(*see* Penal Law § 70.45 [1]). The implementation of mandatory
PRS spurred a series of cases in this Court, beginning with
*People v Catu* (4 NY3d 242 [2005]), in which we held that where
PRS is a "direct consequence" of a conviction, a defendant
seeking to plead guilty must be informed that a period of PRS
constitutes part of his sentence if the plea is to be valid under
the knowing, voluntary and intelligent standard (*see id.* at 244-
245). Thus, a defendant who was not advised about a term of
PRS prior to pleading guilty may seek vacatur of the plea.

Shortly after *Catu,* the United States Court of Appeals for the
Second Circuit declared in *Earley v Murray* (451 F3d 71 [2006],
*cert denied sub nom. Burhlre v Earley,* 551 US 1159 [2007]) that
a defendant is entitled to habeas corpus relief in federal court if

correction officials administratively imposed PRS that was not ordered by a court. A few weeks later, our decision in *People v Van Deusen* (7 NY3d 744 [2006]) dealt with a defendant who requested the withdrawal of her plea prior to sentencing because she had not been told about PRS as part of her negotiated plea bargain. The sentencing court had attempted to correct this oversight by combining the five-year mandatory term of PRS with a reduced prison sentence so that the total prison term would be less than the maximum 15-year sentence that the defendant had been promised. We rejected this corrective action, determining that a *Catu* error could not be rectified in this manner because, when the defendant pleaded guilty, "she did not possess all the information necessary for an informed choice among different possible courses of action" and, therefore, her plea was involuntary (*id.* at 746).

Then, in *People v Louree* (8 NY3d 541 [2007]), we recognized that a *Catu* error may be raised on direct appeal even if a defendant did not preserve the issue by moving to withdraw a plea prior to sentencing (as Van Deusen had done) or seeking vacatur of the conviction after sentencing (*see id.* at 545-546). And in *People v Hill* (9 NY3d 189 [2007], *cert denied* 553 US 1048 [2008]), we reiterated that a *Catu* error requires vacatur of a defective guilty plea since the error affects the defendant's due process rights (*see id.* at 193).

In April 2008, we issued the decisions in *Matter of Garner v New York State Dept. of Correctional Servs.* (10 NY3d 358 [2008]) and *People v Sparber* (10 NY3d 457 [2008]). These cases dealt with the legality of the administrative imposition of PRS by the Department of Correctional Services (DOCS) in situations where the sentencing courts had not pronounced PRS as part of the sentences. In *Garner*, we ruled that DOCS did not have the authority to add PRS to an inmate's sentence because "CPL 380.20 and 380.40 collectively provide that only a judge may impose a PRS sentence" (10 NY3d at 360). And in *Sparber*, we held that imprisoned defendants who raised the pronouncement issue on direct appeal, but did not seek vacatur of their pleas, were not entitled to have PRS expunged from their sentences as this would result in non-PRS sentences that contravened the statutory mandate for determinate sentences (*see* Penal Law § 70.45 [1]). Consequently, we concluded that the appropriate remedy for defendants like Sparber was a resentencing proceeding that could provide for the proper inclusion of PRS (*see* 10 NY3d at 471-472).

In the aftermath of these cases, the Legislature sought to deal with the significant number of incarcerated individuals whose status had been affected by the *Catu* and *Garner/Sparber* decisions. Section 70.85 was enacted (L 2008, ch 141, § 2) to address "cases in which a determinate sentence was imposed . . . and was required by law to include a term of post-release supervision, but the court did not explicitly state such a term when pronouncing sentence." The statute allows a resentencing court to reimpose the originally pronounced determinate prison sentence without PRS if the District Attorney so consents. The purpose of this statute was to "avoid the need for pleas to be vacated when the District Attorney consents to re-sentencing without a term of PRS" (Governor's Approval Mem, at 2, Bill Jacket, L 2008, ch 141, reprinted in 2008 McKinney's Session Laws of NY, at 1653). In addition, section 601-d of the Correction Law was added to permit DOCS to notify sentencing courts that PRS had not been properly imposed in certain cases (these defendants are referred to as "designated persons") and to have these defendants returned to the original sentencing courts for modification of their sentences to include PRS.

Most recently, in May 2009, we decided another case where the defendant pleaded guilty but was not adequately informed about PRS. In *People v Boyd* (12 NY3d 390 [2009]), the People mentioned PRS at the plea proceeding but the court stated that it did not have to order it because PRS was a mandatory part of the sentence. The court then asked the defendant if he understood that PRS was mandatory and the defendant responded in the affirmative. However, the defendant was not advised of the specific duration of his PRS term at the time of his plea, nor did the court formally impose a term of PRS as part of the sentence. We determined that these deficiencies rendered the plea involuntary and that defendant did not need to preserve this issue by a postallocution motion to withdraw his plea (*see id.* at 393). Although the People requested that the defendant be resentenced without PRS under the procedure adopted in Penal Law § 70.85 in order to avoid vacatur of the guilty plea, we declined to approve this remedy in *Boyd*, finding it premature. We explained:

> "This corrective action should not be entertained at this time because the constitutionality of this new provision and its applicability to this case have not been sufficiently developed for our review. . . . [T]he

issue of whether the deficiency in the plea allocution can be rectified by granting defendant specific performance of the plea agreement—a determinate sentence without imposing a term of PRS—should be determined by Supreme Court in the first instance. We therefore remit this case to Supreme Court to give the People the opportunity to litigate their argument regarding the applicability of Penal Law § 70.85 and for defendant to assert any constitutional challenges to the operation of the statute" (*id.* at 394).

Unlike the defendant in *Boyd* who requested vacatur of his plea, we now have before us five defendants who are not challenging the validity of their convictions but instead raise a variety of statutory and constitutional issues regarding resentencing under Correction Law § 601-d. In each of these cases, defendants received determinate sentences that did not include a term of PRS. Following our decisions in *Garner* and *Sparber*, DOCS initiated resentencing proceedings under Correction Law § 601-d so that PRS could be formally pronounced in each case. The defendants here do not seek reversal of their convictions because they have completed their originally-imposed prison sentences and have been released from custody by DOCS. Before addressing their contentions, we review the pertinent facts of each case.

## II. The Defendants

*People v Darrell Williams*

In 2004, defendant Darrell Williams agreed to enter a guilty plea to assault in the second degree in exchange for a promised prison sentence of three years, to be followed by three years of PRS. The plea was accepted by Supreme Court but the court did not formally pronounce the term of PRS during the sentencing proceeding. DOCS nevertheless conditionally released Williams to PRS in September 2006.

In May 2007, Williams was reincarcerated for violating PRS. Following our decision in *Garner*, DOCS notified the sentencing court of its failure to properly impose PRS. Williams claimed that resentencing exceeded the court's jurisdiction and would violate his double jeopardy and due process protections. Supreme Court concluded that it had the inherent authority to correct the original sentence because it was illegal in the absence of a period of PRS. The court did, however, order that Williams

be immediately released from custody on the rationale that he could not have violated PRS before it was a proper component of his sentence. The Appellate Division affirmed (59 AD3d 172 [1st Dept 2009]) and a Judge of this Court granted Williams leave to appeal (12 NY3d 823 [2009]).

*People v Efrain Hernandez*

Defendant Efrain Hernandez pleaded guilty to burglary in the second degree and was sentenced to seven years' imprisonment. PRS was not discussed during the plea proceeding or at sentencing. DOCS administratively imposed five years of PRS and Hernandez was conditionally released from prison in December 2005.

Hernandez violated PRS and was sent back to prison. After the enactment of Correction Law § 601-d, DOCS notified the sentencing court that Hernandez was a designated person for the purpose of resentencing. Hernandez opposed resentencing on statutory and constitutional grounds.

Supreme Court determined that there were no legal impediments to the resentencing procedure under Correction Law § 601-d because the original sentence was illegal without a term of PRS and Hernandez could not have had a reasonable expectation of finality in that sentence once DOCS informed him that PRS was required. At resentencing, in lieu of PRS, the court offered Hernandez the option to withdraw his guilty plea and proceed to trial, but he declined this offer and was resentenced to the original prison term plus five years of PRS.

The Appellate Division affirmed (59 AD3d 180 [1st Dept 2009]), holding that a sentencing court has the inherent power to correct an illegal sentence even if the correction occurs more than one year after conviction. The court also determined that a defendant cannot have a legitimate expectation of finality in an illegal sentence and that the imposition of PRS was not fundamentally unfair. A Judge of this Court granted Hernandez leave to appeal (12 NY3d 817 [2009]).

*People v Craig Lewis*

Defendant Craig Lewis was indicted for burglary, assault and criminal contempt after he assaulted his ex-girlfriend and subsequently entered her home without permission in violation of an order of protection. Unlike the other defendants in these appeals, Lewis declined to plead guilty and exercised his right to a jury trial. Although the jury acquitted Lewis of assault, he was convicted of burglary and two counts of criminal contempt.

The sentencing court ordered an aggregate prison sentence of five years but did not impose PRS.

DOCS administratively added PRS and, after Lewis was released from confinement, the sentencing court was notified that Lewis was a designated person qualifying for resentencing pursuant to Correction Law § 601-d. Lewis interposed various objections to resentencing, which were rejected by the court that resentenced defendant to five years of PRS. The Appellate Division affirmed (60 AD3d 425 [1st Dept 2009]) and a Judge of this Court granted Lewis leave to appeal (12 NY3d 818 [2009]).

*Matter of Echevarria v Marks*

Petitioner Danny Echevarria pleaded guilty to first-degree rape and other offenses in return for an aggregate prison sentence of five years. PRS was not discussed during the plea proceeding and it was not made part of the sentence, although defense counsel referenced PRS during the sentencing proceeding. Before Echevarria was released from prison, he signed a DOCS certificate acknowledging a term of PRS. Thereafter, he violated the terms of PRS on several occasions and was returned to prison. Since *People v Sparber* (10 NY3d 457 [2008]) was decided while Echevarria was in custody for a PRS violation, DOCS notified the sentencing court that Echevarria should be resentenced.

Petitioner commenced a CPLR article 78 proceeding against the sentencing judge (respondent Marks), seeking relief in the nature of prohibition to preclude resentencing on jurisdictional and constitutional grounds. In dismissing the petition, the Appellate Division reasoned that, even if resentencing was beyond the court's jurisdiction, Echevarria could not pursue discretionary prohibition relief because he had an adequate remedy at law—a direct appeal from his resentencing (57 AD3d 1479 [4th Dept 2008]). We granted leave to appeal (12 NY3d 828 [2009]).

*People v Edwin Rodriguez*

Defendant Edwin Rodriguez pleaded guilty to second-degree burglary in exchange for seven years' imprisonment. PRS was not discussed during his plea allocution or at sentencing. DOCS later informed Rodriguez that he was required to serve five years of PRS and he was conditionally released from prison in early 2007. Later that year, Rodriguez was arrested for violating PRS.

DOCS identified Rodriguez as a designated person and initiated the resentencing process. Rodriguez rejected the court's

offer to withdraw his guilty plea, raised no objection to the imposition of PRS and was resentenced to the original prison term, with a five-year term of PRS. The Appellate Division affirmed (60 AD3d 452 [1st Dept 2009]) and a Judge of this Court granted leave to appeal (12 NY3d 928 [2009]).

### III. Statutory Challenges to the Imposition of PRS at Resentencing

In these appeals, defendants[1]—who have completed serving their sentences of imprisonment and have been released from prison—assert several statutory challenges to the imposition of PRS in a resentencing proceeding. Although they recognize that courts have the "inherent power" to correct illegal sentences, defendants contend that this authority cannot be exercised more than one year after the declaration of the original sentence under CPL 440.40. Defendants claim that such resentencings are further subject to the prohibition in CPL 380.30 against unreasonable delays. They also argue, in the alternative, that Correction Law § 601-d allows a resentencing court the option to decline to resentence a defendant, even if the People do not so consent, and that the failure of a sentencing court to consider this option constitutes an abuse of discretion requiring the nullification of PRS.

As a general principle, a sentence cannot be changed once a defendant begins to serve it; however, this applies only if the "sentence is in accordance with law" (CPL 430.10). Our precedent has long recognized that courts have the inherent authority to correct illegal sentences (*see e.g. People v Richardson*, 100 NY2d 847, 852-853 [2003]; *People v Minaya*, 54 NY2d 360, 364 [1981], *cert denied* 455 US 1024 [1982], citing *Bohlen v Metropolitan El. Ry. Co.*, 121 NY 546, 550-551 [1890]). Because PRS is a mandatory component of a sentence for a crime punishable by a determinate prison term (*see* Penal Law § 70.45 [1]), there is no dispute that defendants' original sentences that omitted the imposition of terms of PRS were illegal.

██ Contrary to defendants' assertions, CPL 440.40—which allows the People to move to set aside an invalid sentence within one year of its imposition—does not impose a one-year limitation on a court's authority to rectify an illegal sentence. As we stated in *People v Wright* (56 NY2d 613, 615 [1982]), CPL 440.40

---

1. We use this term to refer to all of the appellants in these cases, including petitioner Echevarria.

"is designed to restrict the People's ability to move to set aside an illegal sentence" and the text of this statute does not "place a similar restriction on the court's inherent ability to correct its own errors." Defendants object to this precedent but the cases on which they rely—*Carlisle v United States* (517 US 416 [1996]) and *United States v Smith* (331 US 469 [1947])—address specific time limits contained in the Federal Rules of Criminal Procedure that do not pertain to the inherent ability of New York courts to modify illegal sentences. In any event, we recently reaffirmed *Wright* in *People v Sparber* (10 NY3d at 471 n 6). Consequently, these resentencing proceedings were not barred by virtue of the fact that they occurred more than one year after defendants were initially sentenced.

■ We also reject the claim that resentencing courts have the option of declining to impose PRS regardless of whether the People consent to that disposition. Penal Law § 70.85 specifies that in cases where PRS was required but not explicitly pronounced at sentencing, the matter may be returned for resentencing pursuant to Correction Law § 601-d, and the court may decide to reimpose the original determinate sentence without PRS "only on consent of the district attorney" (Penal Law § 70.85). Hence, a court may decline to impose PRS during resentencing only when the People issue the statutorily required consent under Penal Law § 70.85.

■ Finally, defendants submit that the sentencing courts in these cases lost jurisdiction to resentence them under CPL 380.30 due to the length of the delays between the original sentencings and the resentencing proceedings. Certainly, the statute requires that sentences must be imposed "without unreasonable delay" (CPL 380.30 [1]), and in furtherance of that statutory directive, we have held that an unexplained delay of several years between conviction and sentencing results in the loss of jurisdiction over a defendant (*see People v Drake*, 61 NY2d 359, 366 [1984]; *People ex rel. Harty v Fay*, 10 NY2d 374, 379 [1961]). Here, even assuming that CPL 380.30 applies, there was no violation of the statute because defendants were resentenced within a reasonable time after DOCS notified the courts that these defendants were "designated persons" under Correction Law § 601-d.

Accordingly, defendants have identified no statutory barriers to the correction of the illegal sentences that were originally imposed.

IV. Constitutional Claims

Defendants next challenge the imposition of PRS as a violation of the Double Jeopardy Clause of the Federal Constitution because the resentencing proceedings occurred after they were released from prison after completing their terms of imprisonment. According to defendants, once they were freed from confinement, they were entitled to a "legitimate expectation of finality" in the sentences that had been originally issued by the sentencing courts. And if a legitimate expectation of finality attached, further governmental supervision in the form of PRS amounted to the imposition of multiple punishments, which is prohibited by the Fifth Amendment.

The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The United States Supreme Court has construed this language to cover three distinct protections: (1) the right to be free from a second trial following an acquittal for the same crime; (2) the right to be free from a second trial following a conviction for the same offense; and (3) the right not to be punished more than once for the same crime (*see e.g. United States v DiFrancesco*, 449 US 117, 129 [1980]; *see also People v Biggs*, 1 NY3d 225, 228-229 [2003]). The third category—referred to as the "multiple punishments" doctrine—is relevant in these cases.

One of the first cases regarding the protection against multiple punishments was *Ex parte Lange* (18 Wall [85 US] 163 [1873]). Defendant Lange had been sentenced to a year in jail and a $200 fine despite the fact that the crime was punishable by either imprisonment up to one year or a fine between $10 and $200. Once the defendant paid the fine, he sought a writ of habeas corpus but the sentencing court resentenced him instead to one year in jail without any fine. The U.S. Supreme Court ruled that the imposition of the second sentence violated the Double Jeopardy Clause because, after paying the fine specified in the original sentence, no other penalty could be legally imposed on the defendant. The Court reasoned that requiring him to continue serving jail time resulted in more than one punishment for the same offense (*id.* at 176).

Following *Ex parte Lange*, it was unclear whether double jeopardy prevented a sentence from being increased after a defendant began a prison term (*see generally De Maggio v Coxe*, 70 F2d 840 [2d Cir 1934]). *Bozza v United States* (330 US 160, 167

[1947]) clarified that the commencement of an illegal sentence did not prevent a court from correcting the illegality by increasing the total sentence. In *Bozza,* the sentencing error was promptly corrected the same day the original sentence was declared.

The U.S. Supreme Court subsequently extended this rule beyond same-day corrections in *United States v DiFrancesco* (449 US 117 [1980]). There, the Court held that the protection against multiple punishments prevents a sentence from being increased once the defendant has a legitimate expectation in the finality of the sentence (*see id.* at 135-136). Because federal law allowed the government to request that the sentence be set aside on appeal, the Supreme Court concluded that the defendant's legitimate expectation of finality did not attach "until the [government's] appeal is concluded or the time to appeal has expired" (*id.* at 136). Until then, the defendant is on notice that the sentence may be increased at any time before those events occur (*see id.*).

In the cases before us, the correction of the illegal sentences did not occur until well after the expiration of the People's time to seek a statutory remedy (*see* CPL 440.40 [1]; 460.10 [1] [a], [c]). Although the U.S. Supreme Court has yet to weigh the legitimate expectation of finality principle in a situation akin to the matters presented in these appeals, the federal Courts of Appeals have considered similar issues in a context analogous to PRS. In *United States v Rourke* (984 F2d 1063 [10th Cir 1992]) and *United States v Warner* (690 F2d 545, 555 [6th Cir 1982]), for example, the defendants were required to serve a period of "special parole" after release from prison. The failure to impose special parole at sentencing resulted in illegal sentences. Once these errors were corrected via resentencing, the defendants raised double jeopardy challenges to the imposition of the more severe sentences on the ground that they had a legitimate expectation of finality in the original sentences. The federal courts rejected this argument by defendants who had not completed their sentences when the resentencing proceedings were brought, reasoning that these individuals "cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification" (*United States v Rourke,* 984 F2d at 1066; *see also United States v Warner,* 690 F2d at 555 [collecting cases]).

But a different rationale has been applied by the federal courts where defendants have completed their original

sentences of imprisonment. Some courts have held that a reasonable expectation of finality arises upon completion of the imposed sentence, resulting in the attachment of jeopardy precluding resentencing (*see e.g. United States v Silvers*, 90 F3d 95, 101 [4th Cir 1996] ["once a defendant fully serves a sentence for a particular crime, the Double Jeopardy Clause's bar on multiple punishments prevents any attempt to increase thereafter a sentence for that crime"]; *United States v Daddino*, 5 F3d 262, 265 [7th Cir 1993] [completion of incarceration portion of sentence precluded any increase of it]; *United States v Arrellano-Rios*, 799 F2d 520, 524-525 [9th Cir 1986]; *Oksanen v United States*, 362 F2d 74, 80 [8th Cir 1966] [applying the rule to a completed term of probation]; *see also Hernandez v Quarterman*, 340 Fed Appx 210, 215 [5th Cir 2009]), unless the government's time to seek correction of the sentence remains pending at the time of release (*see United States v Rico*, 902 F2d 1065, 1068-1069 [2d Cir 1990], *cert denied sub nom. Baron v United States*, 498 US 943 [1990]; *see also United States v Cook*, 890 F2d 672, 675 [4th Cir 1989]). Other federal courts have suggested that the resentencing of a defendant who has been released from confinement would be unconstitutional (*see e.g. DeWitt v Ventetoulo*, 6 F3d 32, 35-36 [1st Cir 1993], *cert denied* 511 US 1032 [1994]; *United States v Lundien*, 769 F2d 981, 986-987 [4th Cir 1985], *cert denied* 474 US 1064 [1986]; *Breest v Helgemoe*, 579 F2d 95, 101 [1st Cir 1978], *cert denied* 439 US 933 [1978]).[2]

---

2. Some state courts have indicated that the Double Jeopardy Clause applies in similar situations (*see State v Hardesty*, 129 Wash 2d 303, 314-315, 915 P2d 1080, 1086 [1996]; *March v State*, 109 NM 110, 112, 782 P2d 82, 84 [1989]; *State ex rel. Hill v Parsons*, 194 W Va 688, 692, 461 SE2d 194, 198 [1995]; *Maybin v State*, 884 So 2d 1174, 1175 [Fla Ct App 2004]; *cf. State v Pascal*, 108 Wash 2d 125, 135, 736 P2d 1065, 1071 [1987] [no expectation of finality in completed sentence because the state appealed the below guidelines, 90-day jail sentence]). In addition, the Ohio Supreme Court—in a situation somewhat comparable to PRS—has held that the failure to impose a mandatory term of "postrelease control" may be corrected through resentencing if the error is discovered before the original sentence has been completed (*see State ex rel. Cruzado v Zaleski*, 111 Ohio St 3d 353, 358, 856 NE2d 263, 268 [2006]; *State v Bloomer*, 122 Ohio St 3d 200, 206, 909 NE2d 1254, 1261 [2009] [resentencing prior to completion of original illegal sentence does not violate double jeopardy or due process]), but cannot be rectified after a defendant has finished serving the sentence originally imposed by the court (*see Hernandez v Kelly*, 108 Ohio St 3d 395, 401, 844 NE2d 301, 306 [2006]; *see also State v Bezak*, 114 Ohio St 3d 94, 97, 868 NE2d 961, 964 [2007]; *State v Simpkins*, 117 Ohio St 3d 420, 429, 884 NE2d 568, 578 [2008] [reserving judgment on

■ We find this federal precedent persuasive and conclude that, after release from prison, a legitimate expectation in the finality of a sentence arises and the Double Jeopardy Clause prevents reformation to attach a PRS component to the original completed sentence. As we have noted, New York courts have the inherent authority to correct illegal sentences and this power extends beyond the one-year period for the People to seek resentencing in the court of original jurisdiction (*see* section III, *supra*). Moreover, the People are allowed to move to set aside or appeal a sentence on the ground that it is not authorized by law, which may delay final consideration of a case well beyond the one-year term specified in CPL 440.40. Since criminal defendants are charged with knowledge of the relevant laws that apply to them (*see e.g. United States v DiFrancesco*, 449 US at 136), they are presumed to be aware that a determinate prison sentence without a term of PRS is illegal and, thus, may be corrected by the sentencing court at some point in the future (*see generally People v Sparber*, 10 NY3d at 471 [remedy for an imprisoned defendant upon whom PRS was not imposed is resentencing for pronouncement of a legal sentence]). So long as an illegal sentence is subject to correction, a defendant cannot claim a legitimate expectation that the originally-imposed, improper sentence is final for all purposes (*see United States v Fogel*, 829 F2d 77, 87 [DC Cir 1987]).

Yet, there must be a temporal limitation on a court's ability to resentence a defendant (*see generally DeWitt v Ventetoulo*, 6 F3d at 34-35) since criminal courts do not have perpetual jurisdiction over all persons who were once sentenced for criminal acts. Even where a defendant's sentence is illegal, there is a legitimate expectation of finality once the initial sentence has been served and the direct appeal has been completed (or the time to appeal has expired). In these situations, the sentences are beyond the court's authority and an additional term of PRS may not be imposed. With the caveats we have identified, in a case where PRS was not formally pronounced by the sentencing court pursuant to CPL 380.20, we hold that the Double Jeopardy Clause prohibits a court from resentencing the defendant to the mandatory term of PRS after the defendant has served the determinate term of imprisonment and has been released from confinement by DOCS.

---

applicability of the Double Jeopardy Clause to completed sentences], *cert denied* 555 US —, 129 S Ct 463 [2008]).

The People argue that this principle should not apply in these cases because defendants were released from custody after serving only six sevenths of their terms of imprisonment (as contemplated by the statutory scheme of PRS, which withholds credit for the unserved portion of a prison term until PRS is successfully completed) (*see* Penal Law § 70.45 [5] [a]). They further contend that, before defendants were released from prison, defendants were aware that they had to serve PRS—as evidenced by written acknowledgments executed regarding PRS requirements (*see* Penal Law § 70.45 [3]; Executive Law § 259-g [2]; 9 NYCRR 8003.1 [c])—so any expectations defendants may have had regarding the finality of the originally-imposed illegal sentences were neither legitimate nor reasonable. The People also note that defendant Williams agreed at the time he pleaded guilty that he would have to serve three years of PRS, further undermining his expectation of finality.

It is true that defendants were released from prison after serving less than the entire term of their determinate sentences and the records in these cases reveal that some of the defendants did sign documents pertaining to PRS before their release. Nevertheless, these facts do not alter our analysis. *Garner* (10 NY3d 358 [2008]) and *Sparber* (10 NY3d 457 [2008]) were both premised on the fundamental notion that "sentencing is a uniquely judicial responsibility" (*id*. at 470). Thus, the administrative imposition by DOCS of any additional penalty other than that issued by the sentencing court is a nullity (*see Garner*, 10 NY3d at 362) and cannot negate a defendant's reasonable expectation that, once completed, the imposed sentence will not be increased. State law permitted defendants' release after having served substantial portions of their determinate prison terms. At that point, they could not have been reincarcerated for a potential violation of PRS because PRS had not been validly required by a court in the first instance (*see e.g. People ex rel. Lewis v Warden, Otis Baum Correctional Ctr.*, 51 AD3d 512, 513 [1st Dept 2008]; *People ex rel. Gerard v Kralik*, 51 AD3d 1045, 1046 [2d Dept 2008]; *Matter of State of New York v Randy M.*, 57 AD3d 1157, 1159 [3d Dept 2008], *lv denied* 11 NY3d 921 [2009]; *People ex rel. Foote v Piscotti*, 51 AD3d 1407, 1408 [4th Dept 2008]).[3] This is equally true for defendant Williams, notwithstanding his acknowledgment of PRS during

---

**3.** This analysis has no application to a person who, for example, is erroneously released early by DOCS.

his plea proceeding, because the court did not include PRS in its pronounced sentence. Here, defendants' release from incarceration erected a Double Jeopardy Clause barrier to any subsequent upward modifications of their original sentences.

Our dissenting colleague, Judge Smith, believes that *DiFrancesco* virtually "eliminate[d] the applicability of the [Double Jeopardy C]lause to sentencing proceedings" (Smith, J., dissenting op at 223). As we have demonstrated, however, this position has been rejected by most courts that have considered *DiFrancesco* (*see supra* at 215-216). In addition, Judge Pigott's dissent relies on *Bozza* (330 US 160 [1947]) for the proposition that a defendant can never have a legitimate expectation of finality in an illegal sentence. To the contrary, the defendant in *Bozza* was resentenced on the same day the illegal sentence had been imposed, not years later after having served the originally-imposed sentence, as defendants in these cases have done. Judge Pigott's reliance on *Thompson v United States* (495 F2d 1304 [1st Cir 1974]), *Caille v United States* (487 F2d 614 [5th Cir 1973]) and *United States v Rourke* (984 F2d 1063 [10th Cir 1992]), as well as *People v Minaya* (54 NY2d 360 [1981]) (*see* Pigott, J., dissenting op at 226 and n), is similarly misplaced since none of those defendants had served their sentences and been released from confinement. Simply put, none of the precedent cited in this dissent involves persons who were released from incarceration after having served their sentences and were later hauled back into court to face an increase in sentence, not as a result of anything they did, but because of errors committed by the sentencing courts years earlier.[4]

To summarize, once a defendant is released from custody and returns to the community after serving the period of incarceration that was ordered by the sentencing court, and the time to appeal the sentence has expired or the appeal has been finally determined, there is a legitimate expectation that the sentence, although illegal under the Penal Law, is final and the Double

---

4. It is also inaccurate for this dissent to characterize the legitimate expectation of finality as accruing as soon as the one-year period for the People to move to set aside the sentence expires (*see* Pigott, J., dissenting op at 227), especially since we have previously rejected such a time restriction on two occasions (*see People v Sparber*, 10 NY3d at 471 n 6; *People v Wright*, 56 NY2d at 615).

Jeopardy Clause prevents a court from modifying the sentence to include a period of postrelease supervision.[5]

## V. Remaining Issues

There remain a few additional points to address. Defendant Rodriguez failed to raise any objections at his resentencing. As a result, his double jeopardy argument is not preserved for review. He nevertheless believes that the issue may be considered by us because a resentencing proceeding that contravenes the Double Jeopardy Clause results in a mode of proceedings error or the imposition of an illegal sentence, both of which are exempt from the preservation requirement. Rodriguez alternatively maintains that defense counsel's failure to challenge the court's authority to conduct the resentencing proceeding resulted in a deprivation of his right to the effective assistance of counsel.

We have recognized a narrow exception to preservation where a mode of proceedings error affects a court's jurisdiction and power over a defendant (*see e.g. People v Gray*, 86 NY2d 10, 21 [1995]). Constitutional double jeopardy violations generally constitute mode of proceedings errors (*see e.g. People v Biggs*, 1 NY3d at 231) but that rule is most often applied where the People attempt to initiate a second prosecution following an acquittal or conviction.

The People urge that preservation is necessary under *People v Gonzalez* (99 NY2d 76 [2002]), where we concluded that an argument premised on the multiple punishments doctrine must be preserved. The issue in *Gonzalez* was whether the defendant could be convicted and receive concurrent sentences for more than one offense based on a single act. Our determination rested solely on an examination of the relevant Penal Law statutes to assess whether the Legislature intended to authorize cumulative punishments in that situation. Because there were no fundamental jurisdictional overtones to this inquiry, we determined that the claimed deficiency was not a mode of proceedings error (*see id.* at 82; *see also People v Biggs*, 1 NY3d at 231 [recognizing that a statutory double jeopardy claim is not exempt from preservation]).

---

**5.** Because defendants have asserted a meritorious double jeopardy claim, it is unnecessary for us to address their arguments premised on the Due Process and Ex Post Facto Clauses, or the State Constitution. In addition, we note that the constitutional issue identified in *People v Boyd* (12 NY3d at 394) is not at issue in these appeals.

In light of the fact that we are deciding in these appeals that the Double Jeopardy Clause protects a defendant from being resentenced to a more severe punishment after serving the sentence of imprisonment and being released into the community, it necessarily follows that the resentencing courts did not retain jurisdiction to modify the original judgments that were entered in these cases. Because Rodriguez's double jeopardy claim implicates a fundamental mode of proceedings, it is reviewable absent preservation.[6]

Petitioner Echevarria, unlike the other defendants, sought to prevent resentencing by commencing an article 78 proceeding seeking prohibition relief. DOCS requested that the court schedule a hearing in order to provide the parties an opportunity to be heard on the issue prior to the court considering whether it would be appropriate to resentence Echevarria.

Prohibition may be used to preclude a government officer from acting in excess of the officer's jurisdiction (*see e.g. Matter of Rush v Mordue*, 68 NY2d 348, 354 [1986]) and it is an "extraordinary remedy" that is ordinarily unavailable if a "grievance can be redressed by ordinary proceedings at law or in equity or merely to prevent error which may be readily corrected on appeal" (*Matter of Lee v County Ct. of Erie County*, 27 NY2d 432, 437 [1971] [internal quotation marks omitted], *cert denied* 404 US 823 [1971]; *see also Garner*, 10 NY3d at 362). It is also generally inapplicable if the petition raises nonjurisdictional issues, even if they are otherwise unreviewable (*see Matter of Pirro v Angiolillo*, 89 NY2d 351, 355 [1996]).

Although Echevarria raises a double jeopardy claim to resentencing premised on the sentencing court acting in excess of its jurisdiction, the record in this case does not indicate that the judge had considered whether it was appropriate to impose a term of PRS. Here, the court's order scheduled this matter "for consideration of whether the inmate should be resentenced, and that the Clerk arrange for counsel for both parties to appear" on a specific date. Based on these facts, there was no need to seek prohibition relief before the court determined "the lawfulness of the sentence that was imposed" or whether it would accept the served sentence without a term of PRS. Echevarria's article 78 petition should therefore be dismissed.

---

6. In light of this conclusion, it is unnecessary for us to consider his alternative argument that he was deprived of his right to the effective assistance of counsel at the resentencing proceeding.

In conclusion, in *People v Williams*, *People v Hernandez*, *People v Lewis* and *People v Rodriguez*, the Double Jeopardy Clause afforded defendants protection against more severe sentences after they had satisfied the original judgments of the respective sentencing courts and been released from incarceration at the termination of their sentences of imprisonment. The imposition of PRS at resentencing was impermissible and they are entitled to be discharged from PRS. In *Matter of Echevarria v Marks*, the courts below properly dismissed the article 78 petition.

Accordingly, in *Williams*, *Hernandez*, *Lewis* and *Rodriguez*, the orders of the Appellate Division should be reversed, the resentences vacated and the original sentences reinstated. In *Matter of Echevarria v Marks*, the judgment of the Appellate Division should be affirmed, without costs.

SMITH, J. (dissenting in *Williams*, *Hernandez*, *Lewis* and *Rodriguez* and concurring in *Echevarria*). I agree with Judge Pigott that the addition of postrelease supervision (PRS) terms to defendants' sentences did not violate either the State or Federal Double Jeopardy Clause (NY Const, art I, § 6 ["No person shall be subject to be twice put in jeopardy for the same offense"]; US Const Amend V ["nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"]). I disagree with both Judge Pigott and the majority in that I do not think the decisive question is whether defendants had a "legitimate expectation of finality" in the sentences they originally received. That, to me, is a circular question: the prisoners' expectations were legitimate if protected by the Double Jeopardy Clauses, and not otherwise. I find more useful guidance in the Supreme Court's leading decision on the application of double jeopardy principles to sentencing, *United States v DiFrancesco* (449 US 117 [1980]), which convinces me that the Double Jeopardy Clauses have no application to the sort of case now before us.

My colleagues take the *DiFrancesco* decision as creating a "legitimate expectation of finality" test for double jeopardy upon resentencing (majority op at 215; Pigott, J., dissenting op at 227). (They evidently assume, and I join them in assuming, that we should follow *DiFrancesco* in interpreting both the State and Federal Double Jeopardy Clauses.) I think they read something into the case that is not there. In fact, *DiFrancesco* never uses the precise phrase "legitimate expectation of finality." It does say that a sentenced prisoner has no "expectation of finality"

when his sentence is, by statute, subject to a prosecutor's appeal (449 US at 136, 139), and that his "legitimate expectations are not defeated" when such an appeal results in an increased sentence (*id*. at 137); but these are observations about the situation the Court faced in *DiFrancesco*, not formulations of a general rule. *DiFrancesco* never says or implies that "legitimate expectation of finality" is the test for deciding when a resentencing violates double jeopardy.

Much more important to the *DiFrancesco* decision than any catchphrase is the Court's explanation of the very limited effect that the Double Jeopardy Clause has on the power of courts to increase sentences. The essence of the Court's holding is that sentences and acquittals are different for double jeopardy purposes; the Double Jeopardy Clause does not render a sentence final and unreviewable, as it does an acquittal. "[A] sentence does not have the qualities of constitutional finality that attend an acquittal" (*id*. at 134). The Double Jeopardy Clause as interpreted in *DiFrancesco* "does not provide the defendant with the right to know at *any* specific moment in time what the exact limit of his punishment will turn out to be" (*id*. at 137 [emphasis added]).

The *DiFrancesco* Court identified only one double-jeopardy limitation on sentences: "a defendant may not receive a greater sentence than the legislature has authorized" (*id*. at 139). The Court found this principle to be established by *Ex parte Lange* (18 Wall [85 US] 163 [1873]). In *Lange*, the petitioner was granted relief because he had been sentenced to both a fine and imprisonment, though the applicable statute permitted only one or the other. The *DiFrancesco* Court said the *Lange* holding is "not susceptible of general application" (449 US at 139).

Nothing in *DiFrancesco* suggests that the Double Jeopardy Clause itself has "general application" to sentencing outside of the rare *Lange*-type situation. Justice Brennan, dissenting in *DiFrancesco*, seemingly read that case, as I do, nearly to eliminate the applicability of the clause to sentencing proceedings. Indeed, Justice Brennan found implicit in the *DiFrancesco* majority's holding a rejection of the idea that completion of a defendant's originally-imposed sentence is critical for double jeopardy purposes—an idea espoused by the majority here. "Under the Court's view, there is no double jeopardy bar to imposition of additional punishment by an appellant [*sic*] court *after* the defendant has completed service of the sentence imposed by the trial court" (*id*. at 152 n 15 [Brennan, J., dissenting]).

In short, my colleagues and I read *DiFrancesco* very differently. There is (nonbinding) precedent for both readings. Some courts have, like today's majority and Judge Pigott, found a "legitimate expectation of finality" test in *DiFrancesco (United States v Silvers*, 90 F3d 95, 101 [4th Cir 1996]; *United States v Arrellano-Rios*, 799 F2d 520, 523-524 [9th Cir 1986]); others have read *DiFrancesco* as largely eliminating double jeopardy issues in resentencing cases (*DeWitt v Ventetoulo*, 6 F3d 32, 34 [1st Cir 1993]; *United States v Lundien*, 769 F2d 981, 986 [4th Cir 1985]). I think the latter cases read *DiFrancesco* correctly.

In concluding that the Double Jeopardy Clauses are largely irrelevant to a situation like the present one, I do not imply that either the State or Federal Constitution gives courts carte blanche to increase defendants' sentences whenever they choose, up to the maximum permitted by statute. Rather, I follow the *DeWitt* and *Lundien* courts in concluding that due process, not double jeopardy, sets limits—though not narrow or rigid ones—on courts' resentencing power. The flexible approach that courts customarily use in interpreting Due Process Clauses— avoiding arbitrary cutoffs, but addressing "the familiar due process problem of deciding how much is too much" (*DeWitt*, 6 F3d at 36)—is better suited than double jeopardy analysis to identifying and correcting the few cases in which a belated sentencing enhancement is inconsistent with fundamental fairness. Such a case will be "the very rare exception to the general rule that courts can, after sentence, revise sentences upward to correct errors" (*id.*).

If the issue is understood as one of fundamental fairness, the cases now before us are easy ones. There is nothing fundamentally unfair about what happened to these defendants. Their sentences were enhanced, not by increasing their prison terms, but by adding terms of PRS required by state statute— components of their sentences inadvertently omitted when the sentences were pronounced. Those who did not know before they were originally sentenced that they were supposed to be subject to PRS soon found out, or at least had ample opportunity to do so. As Judge Pigott demonstrates, "[a]ll the evidence suggests that from the moment they entered the prison system, if not before, defendants expected to serve postrelease supervision" (Pigott, J., dissenting op at 228). None of them, so far as the record shows, complained or expressed surprise when they were (illegally) subjected to PRS on their release. None of these defendants is remotely comparable to the petitioner whose due

process claim was upheld in *DeWitt*. DeWitt had been granted a suspension of his life imprisonment sentence, had been released on parole, and had established a business and personal relationships in the community, only to be given the completely unexpected news that the suspension was a mistake and he was subject to a life sentence after all.

Since the resentencings of defendants in *People v Williams*, *People v Hernandez*, *People v Lewis* and *People v Rodriguez* violated neither their double jeopardy nor their due process rights, I would affirm the orders from which they appeal. In *Matter of Echevarria v Marks*, I concur in the result.

PIGOTT, J. (dissenting in *Williams, Hernandez, Lewis* and *Rodriguez* and concurring in *Echevarria*). According to the majority, a defendant who knows that the sentence he received is illegal, because it contravenes Penal Law § 70.45, nevertheless acquires a legitimate expectation in the finality of his sentence simply by virtue of being released from prison. Because that holding conflicts with United States Supreme Court jurisprudence, I dissent.

To begin with, I agree with the majority that there was no statutory impediment to the imposition of postrelease supervision on the defendants in these cases, after they had completed their terms of imprisonment (*see* majority op at 213). But I cannot accept the majority's conclusion that imposing postrelease supervision on defendants in Correction Law § 601-d resentencing proceedings violates their rights under the Double Jeopardy Clause of the United States Constitution.

The majority concedes that "[s]ince criminal defendants are charged with knowledge of the relevant laws that apply to them, they are presumed to be aware that a determinate prison sentence without a term of [postrelease supervision] is illegal and, thus, may be corrected by the sentencing court at some point in the future" (majority op at 217 [citation omitted]). But the majority fails to follow these propositions to their logical conclusion. A defendant who *knows* that the sentence he was given is illegal and is subject to correction cannot claim to have a legitimate expectation that the sentence will remain uncorrected. There can be no reasonable expectation of finality in a sentence that is less severe than required by the law.

The Supreme Court expressly held in *Bozza v United States* (330 US 160 [1947]) that a defendant has no legitimate expectation of finality in an unlawful sentence. In *Bozza*, the Court

ruled that a court does not violate a defendant's double jeopardy protections when it merely "set[s] aside what it had no authority to do and substitute[s] directions required by the law" (330 US at 167). Bozza was convicted of operating an illegal still, a crime carrying a mandatory sentence of a $100 fine and a term in prison. The trial court originally sentenced the defendant only to the term of imprisonment. When the court realized its mistake, it resentenced defendant, imposing the $100 fine as well as the prison term. The Supreme Court charged the defendant with knowledge that the court lacked the authority to impose only imprisonment, and held that he had no legitimate expectation of finality in the original, illegal sentence (*id.*). "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner" (330 US at 166-167; *see also Jones v Thomas*, 491 US 376, 387 [1989]).*

Applying *Bozza*, it follows that the defendants in the cases before us cannot claim a legitimate expectation of finality in their sentences. All are, as the majority concedes, presumed to be aware that their determinate prison sentences lacking postrelease supervision are illegal and, thus, subject to correction (*see* majority op at 217). Therefore, none may claim objectively good reason to believe that his sentence would not be corrected. And defendant Williams can have had no expectation of finality for another reason; he acknowledges that he agreed in his plea agreement to serve postrelease supervision. A defendant who was "mistakenly sentenced to a lesser term than he agreed to" does not "acquire a vested interest in the error so that it would be unfair, under the double jeopardy clause, to correct the error and make the defendant serve out the term of his own sentencing agreement" (*People v Minaya*, 54 NY2d 360, 366 [1981]; *see also People v Williams*, 87 NY2d 1014, 1015 [1996]).

In *United States v DiFrancesco* (449 US 117 [1980]), the Supreme Court held that a defendant was charged with

---

* Although the majority suggests that *Bozza* should be limited to situations in which the error is "promptly" corrected (majority op at 215; *see also* majority op at 219), federal courts have given *Bozza* a much wider interpretation. "The full import of *Bozza* is that a trial court not only can alter a statutorily-invalid sentence in a way which might increase its severity, but must do so when the statute so provides" (*Thompson v United States*, 495 F2d 1304, 1306 [1st Cir 1974] [omission of statutorily mandated special parole term from sentence raised during appeal process]; *see also e.g. Caille v United States*, 487 F2d 614, 615 [5th Cir 1973] [same]; *United States v Rourke*, 984 F2d 1063, 1066 [10th Cir 1992] [same]).

knowledge that his sentence was subject to appeal by the government—under a federal statute permitting sentence enhancement of "dangerous special offenders"—and therefore could not have a legitimate expectation of finality (*DiFrancesco*, 449 US at 136, 139). *DiFrancesco* did not involve correction of an illegal sentence, but its rationale applies here, where the defendants are charged with knowledge that their sentences, if illegally imposed, are subject to correction (*see generally United States v Crawford*, 769 F2d 253, 257 [5th Cir 1985]).

Given the Supreme Court's holdings in *Bozza* and *DiFrancesco*, it is clear that a defendant has a legitimate expectation in the finality of his sentence—that is, a reasonable expectation that the sentence he received will not be modified so as to become more severe—only when he has *objective reason* to believe that it will not be changed or corrected. The majority's holding that "there is a legitimate expectation of finality once the initial sentence has been served and the direct appeal has been completed (or the time to appeal has expired)" (majority op at 217) fundamentally misunderstands the concept of an expectation of finality in double jeopardy jurisprudence. A defendant cannot acquire a legitimate expectation of finality from the mere fact that he has been released from prison. Factual or legal circumstances may exist that would undermine a reasonable person's expectation in the finality of the sentence imposed, even *after* release.

Moreover, the majority's requirement of two conditions for the attachment of a legitimate expectation of finality—the completion of "the initial sentence" and the completion of the direct appeal or time to appeal (majority op at 217)—implies that an incarcerated defendant cannot acquire a legitimate expectation of finality *until* his prison sentence is complete. This is also incorrect. Where circumstances do not undermine the expectation, a defendant will acquire a legitimate expectation of finality in his sentence as soon as the appeal process is complete and the one-year period has expired during which the People may move to set aside his sentence as invalid under CPL 440.40 (*compare DiFrancesco*, 449 US at 136 [expectation of finality attaches when time for government appeal has expired]). That period may expire before he is released.

The practical aspects of the litigation before us support the view that the defendants had no expectations of finality in their sentences. It is noteworthy that not one defendant has alleged that he was not informed of the postrelease supervision

component of his sentence upon commencement of his imprisonment (*see* Correction Law § 803 [6]), and not one denies that he was informed of the postrelease supervision before being conditionally released (*see* Penal Law § 70.45 [3]; Executive Law § 259-g [2]). Yet, defendants did not seek to challenge their postrelease supervision when their prison sentences started or even when they were released. All the evidence suggests that from the moment they entered the prison system, if not before, defendants expected to serve postrelease supervision.

The majority insists that "there must be a temporal limitation on a court's ability to resentence a defendant" (majority op at 217, citing *DeWitt v Ventetoulo*, 6 F3d 32, 34-35 [1st Cir 1993]). But *DeWitt* did not involve double jeopardy protections at all. That case held that a tardy, procedurally unique reinstatement of a life sentence, six years after it was suspended, violated a defendant's *due process* rights, and the First Circuit went out of its way to note that although

> "notions of fundamental fairness do place some temporal limit on later increases in sentence . . . [o]nly in the *extreme* case can a court properly say that the later upward revision of a sentence, made to correct an earlier mistake, is so unfair that it must be deemed inconsistent with fundamental notions of fairness embodied in the Due Process Clause" (6 F3d at 35 [emphasis added]).

The majority does not reach defendants' due process arguments, and I will not address them here, except to say that if the majority believes that notions of fundamental fairness embodied in the Due Process Clause mandate that an expectation of finality originates as soon as a defendant's initial sentence has been served, it should say so.

In any case, the statement that "there must be a temporal limitation on a court's ability to resentence a defendant" (majority op at 217) again misconstrues the notion of legitimate expectation of finality, which is constrained not by time, but by whether or not it would be reasonable for defendant to believe that his sentence will not be modified. If, in a particular case, a defendant cannot be hauled back to prison 10 years after he has been released, on the ground of an error in his sentence, that may be because defendant cannot reasonably be charged with having known that his sentence was in any way defective. Or, more likely, it may be because of fundamental fairness considerations embodied in due process rights. It is never merely because of a temporal limitation on resentencing that emerges from double jeopardy protections.

Selecting a defendant's conditional release date to be the time when an expectation of finality attaches is simply arbitrary.

> "The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be. Congress has established many types of criminal sanctions under which the defendant is unaware of the precise extent of his punishment for significant periods of time, or even for life, yet these sanctions have not been considered to be violative of the Clause." (*DiFrancesco*, 449 US at 137.)

Finally, the Supreme Court has often had occasion to repeat that "a sentence does not have the qualities of constitutional finality that attend an acquittal" (*DiFrancesco*, 449 US at 134, citing *Chaffin v Stynchcombe*, 412 US 17 [1973]; *North Carolina v Pearce*, 395 US 711 [1969]; *Bozza*; and *Stroud v United States*, 251 US 15 [1919]; *see also Caspari v Bohlen*, 510 US 383, 391-392 [1994]). Resentencing "does not involve a retrial or approximate the ordeal of a trial on the basic issue of guilt or innocence" (*DiFrancesco*, 449 US at 136). We should be more cautious before we deviate from the Supreme Court's "traditional refusal to extend the Double Jeopardy Clause to sentencing" (*Caspari*, 510 US at 392).

For these reasons, I dissent in *People v Williams*, *People v Hernandez*, *People v Lewis*, and *People v Rodriguez*, and I concur in result in *Matter of Echevarria v Marks*.

Chief Judge LIPPMAN and Judges CIPARICK, READ and JONES concur with Judge GRAFFEO; Judge SMITH dissents and votes to affirm in a separate opinion; Judge PIGOTT dissents in another opinion.

In *People v Williams*, *People v Hernandez*, *People v Lewis* and *People v Rodriguez*: Order reversed, etc.

Chief Judge LIPPMAN and Judges CIPARICK, READ and JONES concur with Judge GRAFFEO; Judge SMITH concurs in result in a separate opinion; Judge PIGOTT concurs in result in another opinion.

In *Matter of Echevarria v Marks*: Judgment affirmed, without costs.