Smith v. Wenderlich

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2015

(Argued:  October 21, 2015                    Decided:  June 24, 2016)

Docket No. 14-3920

_____

RAMEEN SMITH,

Petitioner-Appellant,

- v. -

STEPHEN WENDERLICH, Superintendent, Southport Correctional Facility,

Respondent-Appellee.[*]
_____

Before:  KEARSE, WINTER, and CABRANES, Circuit Judges.

Appeal from a judgment of the United States District Court for the Eastern District of New York, John Gleeson, Judge, denying petition for habeas corpus pursuant to 28 U.S.C. § 2254 alleging that petitioner's right to be free from double jeopardy was violated when the New York State court that had sentenced him in 2000 to 11 years of imprisonment amended his sentence--after he had been imprisoned for 11 years but remained imprisoned because of additional crimes he committed during that 11-year period--by adding a term of post-release supervision that, under New York law,

---

[*]      The Clerk of Court is instructed to amend the official caption to conform with the above.

was required to be part of his 2000 sentence. The district court denied the petition on the ground that the New York court's rejection of Smith's constitutional challenges to the resentencing was neither contrary to nor an unreasonable application of United States Supreme Court precedent.

Affirmed.

PAUL SKIP LAISURE, New York, New York (Lynn W.L. Fahey, Appellate Advocates, New York, New York, on the brief), for Petitioner-Appellant.

ANNE GRADY, Assistant District Attorney, Staten Island, New York (Daniel L. Master, Jr., Acting District Attorney for Richmond County, Morrie I. Kleinbart, Assistant District Attorney, Staten Island, New York, on the brief), for Respondent-Appellee.

KEARSE, Circuit Judge:

Petitioner Rameen Smith, who was convicted in a New York State ("State") court in 2000 of robbery, grand larceny, and criminal possession of stolen property, for which he was sentenced to a determinate term of a total of 11 years' imprisonment, appeals from a judgment of the United States District Court for the Eastern District of New York, John Gleeson, Judge, denying his habeas corpus petition pursuant to 28 U.S.C. § 2254. Smith alleged principally that his right to be free from double jeopardy was violated when, after he had been imprisoned for 11 years but had not been released because of additional convictions, the sentencing court resentenced him in order to add to his 2000 sentence a term of post-release supervision (or "PRS") whose imposition had been required as a matter of New York law. The district court, applying the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), denied the petition on the ground that the New York court's rejection of Smith's constitutional challenges to the resentencing neither was contrary

2

to, nor involved an unreasonable application of, United States Supreme Court precedent. On appeal, Smith contends that the Appellate Division's ruling was contrary to, or an unreasonable application of, the Supreme Court's decisions in Hill v. United States ex rel. Wampler, 298 U.S. 460 (1936) ("Wampler"), and United States v. DiFrancesco, 449 U.S. 117 (1980) ("DiFrancesco"). Finding no merit in his contentions, we affirm the judgment.

# I. BACKGROUND

The Double Jeopardy Clause of the Fifth Amendment, which is made applicable to the states by the Fourteenth Amendment, see Benton v. Maryland, 395 U.S. 784, 794 (1969), provides that no person shall be "subject for the same offense to be twice put in jeopardy," U.S. Const. amend. V. This provision "protects against," inter alia, "multiple punishments for the same offense." DiFrancesco, 449 U.S. at 129 (internal quotation marks omitted). It is in this respect that Smith contends that his right to be free from double jeopardy has been violated.

## A.  Smith's Original Sentence

In 2000, Smith was convicted in State court on two counts of robbery in the second degree, one count of grand larceny in the fourth degree, and one count of criminal possession of stolen property in the fifth degree. He was sentenced in April 2000, as amended in May 2000 nunc pro tunc, to concurrent prison terms of varying types and lengths, including determinate terms of 11 years on the robbery counts, resulting in a determinate sentence totaling 11 years' imprisonment ("Original Sentence" or "2000 Sentence").

When Smith was sentenced, the New York Penal Law provided that "[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision," N.Y. Penal Law § 70.45(1) (McKinney 1999). Smith's 2000 Sentence, though determinate, did not indicate that post-release supervision was included.

In 2008, § 70.45(1) was amended to provide that, when imposing a determinate sentence, the sentencing judge "shall . . . state" the "period of post-release supervision," N.Y. Penal Law § 70.45(1) (McKinney 2009). In the same legislation, additional procedures were introduced to deal with cases in which the imposition of PRS should have been, but was not, stated by the court at sentencing. See generally People v. Williams, 14 N.Y.3d 198, 206-08, 899 N.Y.S.2d 76, 79-81, cert. denied, 562 U.S. 947 (2010).

B. Smith's 2011 Resentencing

As Smith had been in custody during his prosecution for the above crimes, his 11-year prison term would have been due to end in mid-2010, see N.Y. Penal Law § 70.30(3) (McKinney 1998). However, Smith committed two additional crimes during his imprisonment; he was convicted of promoting prison contraband in the first degree in 2005 and in 2010. For the 2005 conviction, he was sentenced to an indeterminate prison term of two-to-four years, to be consecutive to his determinate 11-year term, thereby postponing his release by two years, see N.Y. Penal Law § 70.30(1)(d) (McKinney 2004) ("If the defendant is serving one or more indeterminate sentences of imprisonment and one or more determinate sentence of imprisonment which run consecutively, the minimum term or terms of the indeterminate sentence or sentences and the term or terms of the determinate sentence or sentences are added to arrive at an aggregate maximum term of

4

imprisonment" that is "no[t] . . . less than the term or maximum term of imprisonment of the sentence which has the longest unexpired time to run." (emphases added)). For his 2010 conviction of promoting prison contraband, Smith was sentenced to a consecutive indeterminate prison term of one-and-a-half-to-three years, further extending his prison stay, see id.

In December 2010, the New York State Department of Correctional Services, now known as the Department of Corrections and Community Supervision (collectively "DOCCS"), sent a letter to the judge who had imposed Smith's 2000 Sentence (the "sentencing judge")--with a copy to Smith--stating that although Smith had been given a determinate sentence of imprisonment, for which § 70.45 required the imposition of a period of PRS, the sentence and commitment order received by DOCCS did not indicate that PRS had been imposed. DOCCS cited a 2008 statutory provision that requires it to notify the court whenever it appears to DOCCS that a defendant's determinate sentence does not include PRS, see N.Y. Correction Law §§ 601-d(1) and (2) (McKinney 2009), so that the court may take steps with respect to a resentencing. Section 601-d provides that when a court has received such a notice, if the court determines, after reviewing the record, that a PRS term was not announced at sentencing, the court "shall," inter alia, "appoint counsel" for the defendant, give notice to the parties, and "commence a proceeding to consider [whether to] resentence." Id. §§ 601-d(3) and (4).

Smith's sentencing judge commenced the required review of the 2000 Sentence in early 2011 and found that no PRS term had been imposed. Smith opposed any resentencing to impose PRS, pointing out that he had already been in prison for more than the 11 years imposed in the Original Sentence. He stated that he thus had an expectation that his punishment for his original crimes had

5

become final and argued that the imposition of the additional penalty of PRS in 2011 therefore violated his right to be free from double jeopardy.

In response, the State argued that under § 70.30(1), Smith's 2005 and 2010 convictions while he was serving his 2000 Sentence resulted in a single aggregate sentence, which had not yet been completed. Although Smith would have had a legitimate expectation of finality if he had been released from prison prior to the imposition of PRS, he in fact was still serving his aggregate sentence, and thus no legitimate expectation of finality had attached.

The sentencing judge rejected Smith's double jeopardy challenge; the court resentenced him on the counts on which he received a determinate sentence, by reimposing the prison term and adding a five-year term of post-release supervision. (See People v. Smith, No. 258/99, Supreme Court, Richmond Co., Hearing Transcript, March 31, 2011, at 11-14.)

Smith appealed to the Appellate Division, arguing that the resentencing violated both his right to be free from double jeopardy and his right to due process. That court affirmed the resentence, and the New York Court of Appeals denied leave to appeal. See People v. Smith, 101 A.D.3d 761, 955 N.Y.S.2d 373 (2d Dep't 2012) ("Smith"), lv. denied, 20 N.Y.3d 1065, 962 N.Y.S.2d 616 (2013), and 22 N.Y.3d 959, 977 N.Y.S.2d 190 (2013). The Appellate Division, in rejecting Smith's double jeopardy contention, noted, inter alia, that Smith was "'charged with knowledge'" both "'that a determinate prison sentence without a term of PRS is illegal and, thus, may be corrected by the sentencing court at some point in the future,'" Smith, 101 A.D.3d at 763, 955 N.Y.S.2d at 375 (quoting People v. Williams, 14 N.Y.3d at 217, 899 N.Y.S.2d at 87), and "that, by virtue of Penal Law § 70.30(1), the New York State Department of Corrections and Community Supervision aggregates

6

his sentences into a single sentence," Smith, 101 A.D.3d at 763, 955 N.Y.S.2d at 375 (citing, inter alia, People v. Brinson, 90 A.D.3d 670, 671-72, 933 N.Y.S.2d 728, 729-30 (2d Dep't 2011), lv. granted, 18 N.Y.3d 992, 945 N.Y.S.2d 647 (2012), aff'd, 21 N.Y.3d 490, 972 N.Y.S.2d 182 (2013)).

The Appellate Division noted that "'a legitimate expectation in the finality of a sentence arises and the Double Jeopardy Clause prevents reformation to attach a PRS component to the original completed sentence'" "'after release from prison,'" Smith, 101 A.D.3d at 762, 955 N.Y.S.2d at 375 (quoting People v. Williams, 14 N.Y.3d at 217, 899 N.Y.S.2d at 87). It concluded that Smith had no legitimate expectation of finality because he had not been released:

> [P]ursuant to Penal Law § 70.30(1)(d), the defendant's 11-year determinate sentence was combined with his subsequently imposed consecutive indeterminate sentences, to form a single sentence . . . . Since the defendant was still serving this single, combined sentence at the time of the resentencing, and had not yet been released from prison, he did not have a legitimate expectation of finality in the portion of his sentence attributable to his convictions of robbery in the second degree . . . .

Smith, 101 A.D.3d at 763, 955 N.Y.S.2d at 375 (citing, inter alia, People v. Brinson, 90 A.D.3d at 671-72, 933 N.Y.S.2d at 729-30) (emphases added).

The New York Court of Appeals denied Smith's motion for leave to appeal that decision, but denied it without prejudice to a renewed motion after the Court of Appeals' resolution of then-pending appeals in People v. Brinson, 90 A.D.3d 670, 933 N.Y.S.2d 728, and another case. See People v. Smith, 20 N.Y.3d 1065, 962 N.Y.S.2d 616.

The Court of Appeals thereafter affirmed the appellate decision in People v. Brinson on which the Appellate Division had relied in affirming the resentencing of Smith. See People v. Brinson, 21 N.Y.3d 490, 972 N.Y.S.2d 182 (2013) ("Brinson"). The Court of Appeals' reasoning paralleled that of the Appellate Division in Smith.

7

The Brinson Court dealt with two cases in which the prisoners' original sentences had included determinate sentences but no term of PRS. Each defendant was resentenced to impose PRS at a time when he had been in prison for more than the number of years imposed in his determinate sentence and was still in prison because of his indeterminate sentences. Both prisoners claimed that they had "completed their determinate sentences" and that the imposition of PRS violated the Fifth Amendment Double Jeopardy Clause "prohibition against multiple punishments." Brinson, 21 N.Y.3d at 492, 972 N.Y.S.2d at 183. The Court of Appeals "conclude[d] that the respective resentences do not constitute violations of the Double Jeopardy Clause because defendants do not have a legitimate expectation of finality until they have completed their aggregated sentences under Penal Law § 70.30." Id.

> The Fifth Amendment's Double Jeopardy Clause prohibits multiple punishments for the same crime (see United States v DiFrancesco, 449 US 117, 129 [1980] . . . ). This prohibition "prevents a sentence from being increased once the defendant has a legitimate expectation in the finality of the sentence" (People v Williams, 14 NY3d 198, 215 [2010], citing DiFrancesco, 449 US at 135-136). However, defendants are presumed to be aware that a determinate prison sentence without a term of PRS is illegal . . . and courts have an inherent authority to correct illegal sentences . . . .

Brinson, 21 N.Y.3d at 494, 972 N.Y.S.2d at 184 (other internal quotation marks omitted) (emphases ours). Under New York law a court no longer has authority to correct an illegal sentence if the time to appeal has expired (or the appeal has been completed) and the prisoner has been released. See People v. Williams, 14 N.Y.3d at 217, 899 N.Y.S.2d at 88. The Brinson Court held that

> a legitimate expectation of finality turns on the completion of a sentence. Where multiple sentences are properly aggregated into a single sentence, that expectation arises upon completion of that sentence.

Brinson, 21 N.Y.3d at 496, 972 N.Y.S.2d at 186 (emphases added); see also id. at 494, 972 N.Y.S.2d

8

at 184 ("the defendant's 'expectation of finality arises for purposes of double jeopardy when a defendant completes the lawful portion of an illegal sentence and exhausts any appeal taken'" (quoting People v. Lingle, 16 N.Y.3d 621, 630, 926 N.Y.S.2d 4, 8 (2011) (emphasis in Lingle))). The Court concluded that the defendants in the cases before it

> will have a legitimate expectation of finality upon completion of their respective aggregated sentences. Until such time, resentencing for purposes of correcting their illegal determinate sentences does not run afoul of the Double Jeopardy Clause and the prohibition against "multiple punishments."

Brinson, 21 N.Y.3d at 496, 972 N.Y.S.2d at 186 (emphasis added).

Upon Smith's post-Brinson motion for leave to appeal the Appellate Division's affirmance of his resentencing, the Court of Appeals denied leave to appeal.

C. The Present Habeas Proceeding

Smith commenced the present habeas proceeding in 2014, asserting principally that the Appellate Division's affirmance of his resentencing was contrary to, or an unreasonable application of, the Supreme Court's decisions in both Wampler, 298 U.S. 460, which held it impermissible for a sentence imposed by a court to be enlarged by an administrative entity, see also Earley v. Murray, 451 F.3d 71, 76 n.1 (2d Cir.) ("Earley") (interpreting Wampler's holding as rooted in due process), reh'g denied, 462 F.3d 147 (2d Cir. 2006), cert. denied, 551 U.S. 1159 (2007), and DiFrancesco, 449 U.S. 117, which Smith described as meaning that "an individual serving a single determinate 11-year sentence could not be resentenced after he had been incarcerated for 11 years" (Petition for a Writ of Habeas Corpus by a Person in State Custody ("Habeas Petition") at 20; see id. at 10-25).

9

With respect to federal law as established in Wampler, Smith asserted principally that

> [t]he Appellate Division's decision in this case violated the basic principle that the Supreme Court recognized in Wampler, 298 U.S. at 460, that courts must pronounce sentence upon conviction in the defendant's presence, and that even a term required by statute is not a part of the sentence unless and until a sentencing judge imposes it.

(Habeas Petition at 13; see also id. at 16-17 ("The Appellate Division['s] . . . . entire analysis depended upon a finding that Mr. Smith was serving a single aggregate sentence calculated by DOCCS rather than the separate consecutive sentences imposed by three different sentencing courts in 2000, 2005, and 2010, a finding precluded by Wampler[ and] Earley . . . ."); id. at 15 ("Since the sentencing court imposed one discrete sentence, not a sentence that was merged with subsequent convictions, Mr. Smith is serving separate consecutive sentences, not a single aggregate one."); id. at 16 ("[U]nder clearly established United States Supreme Court precedent, for federal double jeopardy purposes, Mr. Smith's sentences were exactly what the three sentencing judges imposed in court, not the product of release date calculations made by DOCCS under § 70.30. Wampler, 298 U.S. at 464.").)

With respect to his contention that the New York court's affirmance of his resentencing was contrary to or an unreasonable application of the United States Supreme Court's decision in DiFrancesco, Smith asserted that

> [e]ven if the sentences the court imposed could possibly be construed as having been somehow converted into a single aggregate sentence, the Fifth Amendment's Double Jeopardy Clause prohibited resentencing because Mr. Smith had, nonetheless, developed a legitimate "expectation of finality in the original sentence."

(Habeas Petition at 17 (quoting DiFrancesco, 449 U.S. at 139 (emphases ours)).) Perhaps recognizing the premise-denying fallacy of this argument--i.e., the argument that he could have a legitimate expectation that a sentence that "ha[d] been . . . converted" to a different configuration nonetheless

10

retained its "original" configuration--Smith reverted to his invocation of <u>Wampler</u> for the proposition that his sentences could not properly be "aggregate[d]" except by order of a court:

> In <u>Wampler</u>, the United States Supreme Court held that "[t]he only sentence known to the law is the sentence or judgment entered upon the records of the court." 298 U.S. at 464. Since Mr. Smith's supposed "aggregate sentence" was <u>not</u> "entered upon the records of the court," the Appellate Division's holding that he was serving such a sentence, and therefore that resentencing did not violate double jeopardy, <u>see</u> <u>United States</u> v. <u>DiFrancesco</u>, 449 U.S. 117 (1980), was contrary to clearly established federal law as decided by the United States Supreme Court.

(Habeas Petition at 23 (emphasis in original).) He also concluded that since he

> could only be lawfully serving the sentences the court had imposed, <u>Wampler</u>, 298 U.S. at 464, and he had finished serving the determinate sentence to which post-release supervision applied, the state court holdings that he had no expectation of finality that barred resentencing were unreasonable applications of Supreme Court precedent.

(Habeas Petition at 24-25.)

The district court, in a Memorandum and Order dated September 22, 2014 ("District Court Order"), denied Smith's petition, ruling as follows:

> The Appellate Division['s holding] . . . that Smith's service of his illegal 11-year determinate sentence did not establish a legitimate expectation of finality that barred correction of that sentence because at the time of the resentencing he was still serving a single, combined sentence that included his two subsequent prison contraband sentences . . . . was not contrary to the holding of any court, let alone of the Supreme Court of the United States. . . .

> Nor was the Appellate Division's decision objectively unreasonable. Indeed, in the Supreme Court decision <u>United States v. DiFrancesco</u>, on which Smith relies heavily, the Court found that there is no legitimate expectation of finality where the petitioner "is charged with knowledge of [a] statute" that would allow for some future alteration in his or her sentence. 449 U.S. 117, 136 (2010). The Appellate Division charged Smith with knowledge of the New York laws allowing for the aggregation of his sentences into a single sentence and for the correction of sentences from which a mandatory PRS term was unlawfully omitted. The state court's holding mirrors the language in <u>DiFrancesco</u> almost exactly.

District Court Order at 7-8. The district court also rejected Smith's arguments under Wampler:

> There is no specter here that the defendant's judicially-imposed punishment was subsequently enlarged by his jailer, as in Wampler. As for the provision of New York law that combines multiple periods of incarceration, and thus in some cases enlarges the period in which an erroneous failure to impose a PRS term may be corrected, the state court's determination that such a correction does not violate a defendant's double jeopardy rights is neither contrary to nor an unreasonable application of clearly established federal law.

Id. at 8-9 (emphasis added). Judgment was entered denying the petition.

This Court, in an order dated December 23, 2014, granted Smith's application for a certificate of appealability

> on the following issue: Whether Appellant's double jeopardy rights were violated when he was resentenced to add a post-release supervision term to his 11-year determinate sentence, after he had served 11 years, but while still incarcerated on unrelated sentences that were aggregated by operation of New York law. See United States v. DiFrancesco, 449 U.S. 117 (1980); In re Wampler, 298 U.S. 460 (1936).

## II. DISCUSSION

On appeal, Smith argues that "DiFrancesco is the precedent on which a PRS federal double-jeopardy claim should be based" (Smith brief on appeal at 21) and that his habeas petition should have been granted on the ground that after serving 11 years in prison he had a legitimate expectation of finality in his original 11-year determinate sentence, and his resentencing thereafter thus violated double jeopardy principles as articulated in DiFrancesco (see, e.g., id. at 12, 22-23, 26-29). He argues that the State court's ruling that he lacked such an expectation of finality because his sentences had been aggregated into a single sentence that he was still serving at the time of

12

resentencing was impermissible under the Supreme Court's decision in Wampler. (See, e.g., id. at 12-13, 19-21, 28-29.) For the reasons that follow, we disagree.

A. AEDPA Standards

To the extent pertinent here, AEDPA provides that "with respect to any claim that was adjudicated on the merits in State court proceedings," a federal court may not grant a state prisoner's petition for habeas corpus relief unless the state court's adjudication of the claim

> resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States,

28 U.S.C. § 2254(d)(1) (emphases added). "'[C]learly established Federal law'" in this provision "'refers to the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions.'" Carey v. Musladin, 549 U.S. 70, 74 (2006) ("Musladin") (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To the extent that a federal habeas petitioner relies--as Smith does here, in part--on decisions of any other court which are not reflected in a holding of the Supreme Court, such decisions are not a permissible basis for the granting of the writ. When there is no Supreme Court holding on a given issue, "it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law" within the meaning of AEDPA. Musladin, 549 U.S. at 77 (internal quotation marks omitted).

In order to hold that a state-court adjudication was "contrary to" a United States Supreme Court holding, the federal habeas court must conclude that the state court either has arrived at a conclusion that is the "opposite" of the conclusion reached by the Supreme Court on a question of law or has "decide[d] a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. In order to hold that the state court's

13

adjudication constituted "an unreasonable application of" a Supreme Court holding, the district court must conclude that "the state court identifie[d] the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Id. at 413. "[T]his standard is difficult to meet . . . because it was meant to be." Harrington v. Richter, 562 U.S. 86, 102 (2011) ("Richter"). "[T]he purpose of AEDPA is to ensure that federal habeas relief functions . . . not as a means of error correction," but rather "as a 'guard against extreme malfunctions in the state criminal justice systems.'" Greene v. Fisher, 132 S. Ct. 38, 43 (2011) (quoting Richter, 562 U.S. at 102 (other internal quotation marks omitted)).

"In reviewing a district court's decision on a state prisoner's habeas petition, we review the district court's legal rulings de novo," Contreras v. Artus, 778 F.3d 97, 106 (2d Cir. 2015); but "we cannot grant habeas relief where a petitioner's claim pursuant to applicable federal law, or the U.S. Constitution, has been adjudicated on its merits in state court proceedings in a manner that is not manifestly contrary to common sense," Anderson v. Miller, 346 F.3d 315, 324 (2d Cir. 2003).

B.  The Supreme Court's Holdings in DiFrancesco and Wampler

Smith argues that the Appellate Division's rejection of his double jeopardy claim was contrary to or an unreasonable application of the Supreme Court's holdings in DiFrancesco and Wampler.  But he misdescribes the holding in each case.

1.  DiFrancesco

Smith states that "DiFrancesco[] . . . held that when a sentence is no longer subject to correction, the Fifth Amendment's double jeopardy clause bars resentencing" (Smith brief on appeal at 12).  That was not its holding.

14

In DiFrancesco, the Supreme Court considered two provisions of the Organized Crime Control Act of 1970 ("OCCA"), 18 U.S.C. §§ 3575, 3576 (1976) (repealed by Sentencing Reform Act of 1984, Pub. L. No. 98-473, Title II, §§ 212(a)(2), 235(a)(1), 98 Stat. 1987, 2031 (1984), as amended, Sentencing Reform Amendments Act of 1985, Pub. L. No. 99-217, § 4, 99 Stat. 1728 (1985)). In those provisions, OCCA authorized the imposition of increased sentences on a defendant who was found to be a "dangerous special offender," 18 U.S.C. § 3575; it allowed the government to obtain appellate review of the sentence imposed, and it authorized the court of appeals on such an appeal to, inter alia, increase the sentence to one that the district court could, under § 3575, have imposed originally, see id. § 3576. The question was whether § 3576, in authorizing such appellate proceedings, violated the Double Jeopardy Clause; the holding of the Court was that it did not. See 449 U.S. at 120-21, 143.

The State-court decision in the present case--that resentencing the still-imprisoned Smith to impose a condition that was required by statute did not violate principles of double jeopardy--plainly could not be "contrary to" the DiFrancesco Court's holding that a somewhat different procedure that allowed an increase to a defendant's sentence also did not violate double jeopardy.

Nor does the DiFrancesco opinion lend support to Smith's suggestion that its analysis somehow established a rule as to the point at which a prisoner achieves a legitimate expectation of finality in his sentence for double jeopardy purposes (see Smith brief on appeal at 23 ("Smith had," having been sentenced to determinate terms of 11 years and having been in prison for 11 years, "developed a legitimate 'expectation of finality in the original sentence'" (quoting DiFrancesco, 449 U.S. at 139)); id. at 21 (referring to "DiFrancesco's legitimate expectation of finality rule"); see also id. at 24-25 (citing federal court of appeals cases and arguing that "[t]he longer a defendant serves under his original sentence before its illegality is corrected, the greater his expectation of finality")).

Far from establishing a rule such as Smith posits, the DiFrancesco Court stated that

> [t]he Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be,

DiFrancesco, 449 U.S. at 137 (emphases added).

The DiFrancesco Court stated that "the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase." Id. This is especially so where the defendant "is aware at the original sentencing" that additional punishment is authorized. Id. In DiFrancesco, the

> [r]espondent was . . . aware that a dangerous special offender sentence is subject to increase on appeal. His legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked.

Id. (emphasis added). The Court added:

> Although it might be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence, that argument has no force where, as in the dangerous special offender statute, Congress has specifically provided that the sentence is subject to appeal. Under such circumstances there can be no expectation of finality in the original sentence.

Id. at 139 (emphases added).

Similar circumstances exist here with respect to post-release supervision. The New York legislature enacted a statute providing that a sentence containing a determinate term of imprisonment must also impose PRS; it amended the statute to specify that the judge must state the term of PRS in sentencing the defendant; and it enacted statutory procedures by which, if no PRS term was announced in the sentence originally, the court is allowed to resentence the defendant to cure that illegality. A defendant is presumed to be aware that a determinate prison sentence without a term of

PRS is illegal and is presumed to know that the illegality is subject to correction. Under these circumstances, so long as the defendant properly remains imprisoned, he can have no legitimate expectation of finality in a sentence that, illegally, does not provide for his post-release supervision; and a decision upholding such resentencing as not violating double jeopardy principles is entirely consistent with, rather than an unreasonable application of, DiFrancesco.

To be clear, we hold only that, under the deferential standard of AEDPA review, it is not contrary to or an unreasonable application of DiFrancesco for a state court to hold that the Double Jeopardy Clause permits the resentencing of a prisoner while he is still in prison, when such resentencing is necessary to impose a term of supervised release required by statute. We express no view on the broader question of what, if any, vitality remains in the principle, expressed in United States v. Benz, 282 U.S. 304 (1931), that to increase "a punishment already partly suffered . . . . is to subject the defendant to double punishment for the same offense in violation of the Fifth Amendment," id. at 307 (internal quotation marks omitted); see Ex parte Lange, 85 U.S. 163, 175 (1873) (impermissible for court to sentence defendant to both the statutory maximum one-year imprisonment and a fine when only one or the other was authorized, and then, after defendant had paid the fine and served five days in prison, to vacate that sentence and resentence him to one year's imprisonment, "without [recognition of] what [w]as . . . done under" the first sentence). We note that the Supreme Court in DiFrancesco stated that it "confine[d] the dictum in Benz to Lange's specific context," saying that "[t]he holding in Lange, and thus the dictum in Benz, are not susceptible of general application," DiFrancesco, 449 U.S. at 139, but also stated that it "venture[d] no comment as to th[e] limitation" reflected in "the established practice in the federal courts that the sentencing judge

17

may recall the defendant and increase his sentence, at least . . . so long as he has not yet begun to serve that sentence," id. at 134. In any event, Smith relies only on DiFrancesco and Wampler, and does not cite, much less discuss, Benz and Lange.

2. Wampler

Smith argues that the State court's decision was contrary to or an unreasonable application of the Supreme Court's holding in Wampler, stating that a sentence aggregated by "calculat[ions] under § 70.30" is "an aggregate sentence the United States Supreme Court has expressly held could not exist" (Smith brief on appeal at 20 (emphasis added)). There is no such holding in Wampler.

Wampler, which did not address double jeopardy issues at all, involved a prisoner who had been sentenced to both a prison term and a fine. The commitment order issued by the clerk of the court contained the announced penalties, but it also provided that Wampler was to remain in prison until he paid the fine. The Supreme Court held that the condition to which Wampler was subjected only in the commitment order, and not in the sentence stated by the court, was a nullity: "The only sentence known to the law is the sentence or judgment entered upon the records of the court." 298 U.S. at 464. A "prisoner is detained, not by virtue of the warrant of commitment, but on account of the judgment and sentence," id. at 465 (internal quotation marks omitted) (emphasis ours), and "[a] warrant of commitment departing in matter of substance from the judgment back of it is void," id.

Plainly, the State court's affirmance of the resentencing in Smith's case was not contrary to Wampler's holding. The PRS term was imposed on Smith not by an administrator but by

18

the court itself. There was no issue in Wampler as to the permissibility of a sentence's amendment by the court.

Further, the circumstances in Wampler were materially distinguishable from those in the present case in at least two ways. First, the Wampler Court noted that the decision as to whether to enforce a criminal fine by "direct[ing] . . . that the defendant shall be imprisoned until the fine is paid," rather than relying on an execution against the defendant's property, is a matter committed to the court's "discretion." 298 U.S. at 463-64. Here, in contrast, whether to impose a term of PRS was not left to the court's discretion. For a sentence such as Smith's, containing a determinate prison term, a term of PRS is mandatory.

Second, in Wampler the government argued that the district's practice of having the judge instruct the clerk to make the commitment order broader than the judgment was akin "to a rule of court." Id. at 465. The Court rejected that argument, as the practice was undefined and susceptible to abuse:

> [Such] instructions . . . . were not published; they were not reduced to writing; they are lacking in the formal safeguards that protect against mistake and perhaps against oppression.

Id. Here, in contrast, there is a statute on the books that expressly provides in what circumstances a term of PRS must be imposed, that provides that the judge must state that term in announcing the sentence, and that provides procedures by which the absence of a required PRS term may be remedied by the judge.

Smith argues that the principle announced in Wampler was violated because his sentences were aggregated into a single prison term by DOCCS rather than by a court. But it was a

19

court, not DOCCS, that imposed each of Smith's sentences. And the court, not DOCCS, specified that Smith's relevant prison terms were to be cumulative rather than concurrent. Nothing done by DOCCS enlarged Smith's time in prison. Nothing in Wampler suggests that there must be a line of demarcation between a defendant's service of his non-concurrent prison terms; there were no non-concurrent prison terms in Wampler.

Pursuant to § 70.30, DOCCS calculates a defendant's ultimate release date. The components of that date of release from prison include the sentences imposed by the court. Nothing in Wampler suggests that in these circumstances a judge who has properly specified the length and nature of the defendant's sentence must also calculate the defendant's release date. Indeed, a defendant's release date is affected by factors other than the length of his sentence or sentences, such as the length of his pre-conviction detention on any of the relevant charges and the availability of so-called "good time" credits he may earn during his imprisonment, see, e.g., N.Y. Correction Law § 803(1)(a) (McKinney 2013). See generally People v. Williams, 14 N.Y.3d at 218, 899 N.Y.S.2d at 88 (in appropriate cases, "State law permit[s] defendants' release after having served substantial portions of their determinate prison terms" (emphasis added)).

We conclude that the State court's decision that Smith had no legitimate expectation that his determinate sentence had become final, based on the court's conclusion that his judicially imposed sentences could properly be aggregated by DOCCS pursuant to § 70.30 without further participation by the court, and on the fact that because of his intervening crimes he had not been released, did not constitute an unreasonable application of Wampler.

## CONCLUSION

We have considered all of Smith's arguments on this appeal and have found them to be without merit.  The judgment of the district court is affirmed.